# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TAHINA CORCORAN, )<br>   as Next Friend on behalf of )<br>   Joseph E. Corcoran, )<br>        Plaintiff , )<br>       )<br>v. )<br>       )<br>CHRISTINA REAGLE, )<br>   Commissioner, Indiana Dept. of )<br>   Corrections, )<br>       )<br>ANNA QUICK, )<br>   Chief Legal Officer, Indiana Dept. )<br>   Of Corrections, )<br>       )<br>RON NEAL, )<br>   Warden, Indiana State Prison, )<br>        Defendants. ) | Case No. 24-2165<br>**DEATH PENALTY CASE**<br>**EXECUTION SCHEDULED**<br>**DECEMBER 18, 2024,**<br>**BEFORE THE HOUR OF SUNRISE** |

## MOTION FOR PRELIMINARY INJUNCTION –
## STAY OF EXECUTION

Under Rule 65 of the Federal Rules of Civil Procedure, and the All Writs Act, 28 U.S.C. § 1651, Petitioner Tahina Corcoran, as next friend for Joseph Corcoran,[1] respectfully requests a preliminary injunction barring Joseph Corcoran's execution until this Court has the opportunity to decide the merits of his religious liberties claim.

## INTRODUCTION

---

[1] Tahina Corcoran is Joseph Corcoran's wife. She litigates this action on his behalf as next friend petitioner because Mr. Corcoran's paranoid schizophrenia, which manifests in delusions and hallucinations, renders him incompetent and incapable of litigating such an action on his own behalf. Mrs. Corcoran will shortly litigate Mr. Corcoran's incompetency to be executed under *Ford v. Wainwright* and *Panetti v. Quarterman* in the United States District Court for the Northern District of Indiana.

1

This civil rights action for violation of state and federal civil rights under 42 U.S.C. § 1983 arises out of the Indiana Department of Correction's blanket refusal to allow spiritual advisors in the execution chamber during an execution, a decision which violates the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution, and substantially burdens the practice of religion in violation of the Religious Land Use and Institutional Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.

The Free Exercise Clause of the First Amendment prohibits Congress from making a law prohibiting the free exercise of religion. U.S. Const. amend 1. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Free Exercise Clause of the First Amendment is incorporated against the States by the Fourteenth Amendment). RLUIPA grants "expansive protection for religious liberty," affording an inmate with "greater protection" than the relevant First Amendment precedents. *Holt v. Hobbs*, 574 U.S. 352, 358, 361 (2015).

Petitioner faces execution on December 18, 2024, between the hours of midnight and sunrise.  On November 18, 2024, Petitioner requested that the Indiana Department of Correction ("IDOC") accommodate his sincerely held religious beliefs by allowing his life-long spiritual advisor, Reverend David Leitzel, to "be present in the execution chamber with a Bible, be permitted to pray with Mr. Corcoran, and be permitted to have limited physical contact with Mr. Corcoran by placing a hand on his shoulder or holding his hand until the execution is complete." But despite unambiguous legal precedent from the United States Supreme Court for allowing spiritual advisors to be with inmates in the execution chamber at the time of their death, *see e.g., Dunn v. Smith*, 141 S.Ct. 725 (2021); *Ramirez v. Collier*, 595 U.S. 411 (2022), on December 2, 2024, the IDOC rejected Mr. Corcoran's request because under "Indiana Code Section 35-38-6-

11,"[2] all persons assisting the Warden with an execution are to remain confidential and anonymous" and IDOC "will not permit an outside person in the death chamber, as the safety, security and secrecy of those staff could be compromised."

In this civil rights violation complaint filed pursuant to 42 U.S.C. § 1983, Petitioner asserts the IDOC's refusal to grant their religious accommodation request violates their rights under the Establishment and Free Exercise Clauses of the First Amendment and substantially burdens the practice of his religion under RLUIPA. Petitioner now seeks a preliminary mandatory injunction ordering that his execution be STAYED.

## STANDARD FOR ENTERING INJUNCTIVE RELIEF

To prevail on a motion for preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted. *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007). If the moving party meets the first three requirements, then the district court balances the relative harm that could be caused to either party. *Id.*; *see also Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004) (relevant factors include the prisoner's likelihood of success on the merits, the relative harm to the parties, the extent to which the prisoner has unnecessarily delayed his or her claims, and public interest). All factors weigh in favor of granting Petitioner injunctive relief.

I. **PETITIONER SHOULD BE GRANTED AN INJUNCTION PROHIBITING HIS EXECUTION.**

1. **Petitioner is almost certain to succeed on the merits.**

---

[2] Indiana Code Section "35-38-6-11" does not exist. Counsel assumes the IDOC meant to reference Indiana Code Section "35-38-6-1."

Petitioners seeking an injunction must show a "significant possibility of success on the merits." *Lambert*, 498 F.3d at 451 (citing *Hill*, 547 U.S. at 584). Petitioner meets the threshold showing of a "significant possibility of success" because their requests to have his long-time spiritual advisor in the execution chamber, touching his shoulder and praying with him as he dies—common religious exercises—are unquestionably supported by legal precedent. *See Dunn v. Smith*, 141 S.Ct. 725 (2021) (rejecting Alabama's complete ban on spiritual advisors in the execution chamber because the "law guarantees [the inmate] the right to practice his faith free from unnecessary interference, including the moment the State puts him to death"); *Ramirez*, 595 U.S. 411 (finding Ramirez likely to prevail on the merits of his RLUIPA claim, and ordering the district court to enter preliminary relief if Texas reschedules the execution and declines to permit audible prayer or religious touch).

There is absolutely no ambiguity—the condemned have an unequivocal right to have their spiritual advisors present in the execution chamber with them during the transition from life to death, a most pivotal moment in a spiritual and religious life. The Supreme Court determined that "under a preliminary-injunction standard, a condemned inmate would likely succeed on the merits of his RLUIPA claim by which he sought both touch and prayer during his execution." *Gonzales v Collier*, 610 F.Supp. 3d 963, 967 (S.D. Tex. 2022) *(citing Ramirez*, 595 U.S. at 429); *see also Gutierrez v. Seanz*, 141 S. Ct. 127 (2020) (entering stay of execution to consider RLUIPA claim raised in cert petition).

Indeed, *every* state that actively carries out executions as a policy matter allows spiritual advisors to be present, physically touch, and talk quietly with their spiritual charge as they are dying. For example, in Missouri, every executed person but one who made their own choice not to have one, in the last two years has had their spiritual advisor in the chamber praying with them

4

and aiding them in their journey to the afterlife. During the 13 federal executions of 2020 at United States Penitentiary Terre Haute in Terre Haute, Indiana, many of the condemned chose to have their spiritual advisors by their side as the execution was carried out. The Supreme Court's mandate, as guaranteed by the Constitution, that spiritual advisors be allowed inside the execution chamber to spiritual attend to the condemned as they die is a well-established and well-practiced rule. IDOC is not entitled to an exception to the Constitution on their own whim.

The IDOC tersely and without further explanation expressed concern about the identity, confidentiality, and security of the execution team, barring spiritual advisors completely from the execution chamber. This declaration was made via fiat. However, such speculation does not satisfy the Supreme Court. *Ramirez*, 595 U.S. at 430 ("there is no indication in the record that Pastor Moore would cause the sorts of disruptions that respondents fear. Respondents' argument thus comes down to conjecture regarding what a hypothetical spiritual advisor might do.. ."); *see also Fulton v. Philadelphia*, 593 U. S. 522, 542 (2021) ("Such speculation is insufficient to satisfy" a defendant's burden.)

Notably, the IDOC has offered no compelling governmental interest in categorically denying Petitioner's religious request. The Supreme Court has already found these types of categorical bans to *not* be the least restrictive means of protecting the government's interest in safety. *Ramirez*, 595 U.S. at 429-32. And again, the fact that other states have been able to accommodate spiritual advisors praying with the condemned as the execution is carried out is unequivocal evidence that it can be done.

Thus, because the Supreme Court has already ruled on this *identical issue* so that Mr. Corcoran has a right to have Rev. Leitzel in the execution chamber with him during his execution

5

on December 18, 2024, and because it is clear from other states' practice that this policy is possible, Petitioner will almost certainly succeed on the merits of this case.

2. **Lack of adequate remedy at law.**

Because a stay of execution is an equitable remedy, Petitioner has no adequate remedy at law. *Lambert*, 498 F.3d at 452.

3. **Petitioner will be irreparably harmed if a stay is not granted.**

While irreparable injury "is necessarily present in capital cases, *Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985), it cannot credibly be contested that Petitioner's execution without access to a spiritual advisor in the execution chamber will cause irreparable harm.

In *BBL, Inc. v. City of Angola*, Case No. 1:13-CV-76-RLM-RBC, 2014 WL 26093 (N.D. Ind. Dec. 31, 2013), the court noted: "Violation of First Amendment rights constitutes irreparable harm, and protecting First Amendment rights is always in the public interest." citing *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). As the Seventh Circuit explained in *Christian Legal Soc'y*, 453 F.3d at 859: "The loss of First Amendment freedoms is presumed to constitute irreparable injury for which money damages are not adequate."

If a stay is not granted to ensure Rev. Leitzel can be present in the execution chamber as the Supreme Court and the Constitution have determined he is permitted to do, Petitioner will be unable to engage in protected religious exercise in the final moments of his life; compensation paid to his estate would absolutely not remedy this harm, which is spiritual rather than pecuniary. *See Ramirez*, 595 U.S. at 433. Without Rev. Leitzel's prayer and homily beside him, the seriously mentally ill Petitioner will face his death alone, without the spiritual guidance he relies on as he moves to the afterlife. Denying Petitioner religious guidance and spiritual aid in his final moments is undoubtedly an irreparable harm.

4. **Balancing of the Relative Harms.**

Because Petitioner seeks injunctive relief, they have the burden of proving by a clear showing that a balancing of the equities falls in their favor. *Lambert*, 498 F.3d at 452. Although the State of Indiana has an interest in carrying out executions, it cannot do so in contravention of Petitioner's religious freedoms, especially given the IDOC's ban on spiritual advisors in the execution chamber is not the least restrictive means of ensuring security and secrecy. Moreover, adherence to the Constitution is one of the State's most fundamental duties.

The public's interest would be served by granting Petitioner's religious requests. The public has an interest in ensuring state actors respect the religious rights of all persons and protect all rights granted to the public under the U.S. Constitution. A public denial of a person's constitutional right to the free exercise of religion is a threat to everyone's protections under the constitution.

As the petition describes in detail, the religious freedom questions under the RLUIPA and the First Amendment are issues of great public importance. Both Congress and this Supreme Court have recognized the importance of protecting that liberty even for, and maybe especially for, the condemned.

II. **ALTERNATIVELY, THIS COURT HAS THE POWER TO ENTER A PRELIMINARY INJUNCTION IMPOSING A STAY OF EXECUTION UNDER THE ALL WRITS ACT.**

If the current suit cannot be completely resolved, there is an alternative basis for a stay of execution. It is essential that "[a] death sentence cannot begin to be carried out by the State while substantial legal issues remain outstanding." *Barefoot v. Estelle*, 463 U.S. 880 (1983). Once substantial legal issues are raised, a petitioner is "entitled to a stay of execution to permit due

consideration of the merits" if the claim cannot be resolved prior to the scheduled date of the execution. *Id.*

The All Writs Act authorizes "[t]he Supreme Court and all courts established by Acts of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court has interpreted the All Writs Act to allow federal courts to "avail itself of auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *United States v. New York Telephone Co.*, 434 U.S. 159, 172-73 (1977). Indeed, unless specifically constrained by an act of Congress, the Act authorizes a court to issue writs any time "the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942). A preliminary injunction under the All Writs Act is appropriate in this case to preserve the integrity of these proceedings and this Court's jurisdiction to decide the case so the Court can enforce its judgment. If this Court cannot determine whether the IDOC's confidentiality and security concerns warrant such a drastic and invasive blanket ban on religious rights by December 18, 2024, or the IDOC cannot adjust its execution protocol to account for Mr. Corcoran's constitutionally mandated right to have Reverend Leitzel present in the execution chamber, this Court can and should utilize the All Writs Act to enjoin his execution.

The need for this Court to issue an injunction to preserve its jurisdiction distinguishes an injunction under the All Writs Act from other injunctions in that this Court can grant the injunction without evaluating the four factors applicable to traditional injunctions. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a preliminary injunction do not apply to injunctions under the All Writs Act because a court's

8

traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); *see also United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (affirming grant of injunction under the All Writs Act without regard to the traditional multi-factor test to determine whether to grant an injunction); *De Beers Consol Mines, Ltd. V. United States*, 325 U.S. 212, 219 (1945) (stating, in reviewing a lower court's ruling concerning an injunction under the All Writs Act, that it is necessary to ascertain "what is the usage, and what are the principles of equity applicable in [this] case," without mentioning the traditional injunction requirements).

Thus, alternatively under the All Writs Act, this Court must issue a preliminary injunction to avoid Mr. Corcoran's execution prior to the orderly resolution of this case regarding whether Mr. Corcoran's rights under the First Amendment, the provisions of RLUPA, and the unambiguous holdings of *Dunn v. Smith*, *Gutierrez v. Saenz*, and *Ramirez v. Collier*.

## Conclusion

FOR THE FOREGOING REASONS, and those set forth in the Complaint under 42 U.S.C. § 1983, Petitioner respectfully requests that this Court grant injunctive relief and prevent his execution.

Respectfully submitted,

*/s/ Laurence E. Komp*
LAURENCE E. KOMP, MO. Bar #40446
FAITH J. TAN, IL. Bar #6342729
MICHELLE M. LAW, MO. Bar #45487
Capital Habeas Unit
Federal Public Defender
Western District of Missouri
1000 Walnut St., Ste. 600
Kansas City, MO 64106
(816) 675-0923
laurence_komp@fd.org
faith_tan@fd.org

9

michelle_law@fd.org
*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

    I hereby certify that on December 9, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and sent it via email to Tyler Banks, Office of Indiana Attorney General, at Tyler.Banks@atg.in.gov.

/s/ Laurence E. Komp
Laurence E. Komp